UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 17-1123 JGB (DTBx)** | Date | September 6, 2017 |
| Title | *Graham and Tammie A. Wilson v. JPMorgan Chase Bank, N.A., et al.* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order: (1) GRANTING Plaintiffs' Motion to Remand and REMANDING the matter to Riverside Superior Court (Dkt. No. 11); (2) DENYING Plaintiffs' Request for Attorney's Fees (id.); and (3) VACATING the September 11, 2017 Hearing (IN CHAMBERS)

Before the Court is Plaintiffs' Motion to Remand the action to Riverside Superior Court and Plaintiffs' request for attorney's fees. (Dkt. No. 11.) These matters are appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers timely filed in support of, and in opposition to the matters, the Court: (1) GRANTS Plaintiffs' Motion to Remand, and (2) DENIES Plaintiffs' Request for Attorney's Fees. (Dkt. No. 11.) The matter is hereby REMANDED to Riverside Superior Court, and the September 11, 2017 hearing is VACATED.

## I. BACKGROUND

**A. Procedural History**

On March 27, 2017, Graham and Tammie A. Wilson ("Plaintiffs") filed a complaint in Riverside Superior Court against JPMorgan Chase Bank, N.A. ("Chase"), MTC Financial, Inc. dba Trustee Corps. ("MTC"), Preeminent Investment Corporation ("Preeminent"), and Does 1 through 20 (collectively, "Defendants"), alleging thirteen causes of action pertaining to Defendants' alleged failure to properly follow the pre-foreclosure procedures established in the California Homeowner's Bill of Rights. ("Complaint," Dkt. No. 1-1.)

On June 7, 2017, Defendants filed a Notice of Removal based on diversity jurisdiction, 28 U.S.C. § 1332. (Notice of Removal, Dkt. No. 1 at ¶ 11.) On July 7, 2017, Plaintiffs filed a Motion

to Remand the matter to Riverside Superior Court, arguing that Defendants have not met their burden to show complete diversity exists between the parties and that the amount in controversy has been met. ("Motion," Dkt. No. 11.) On August 23, 2017, Defendants filed an Opposition to Plaintiffs' Motion. ("Opposition," Dkt. No. 17.) Plaintiffs filed their Reply on August 24, 2017, which attached an accompanying exhibit. ("Reply," Dkt. No. 18; Ex. A, Dkt. No. 18-1.)

**B. Factual Allegations and Claims**

Plaintiffs allege that they obtained a loan in the amount of $435,350 on April 27, 2007 secured by a Deed of Trust on 35929 Lexi Lane, Wildomar, California 92595 ("subject property"). (Compl. at ¶ 9.) The Deed of Trust identifies Chase as the lender and beneficiary, Chicago Title Company as the trustee, and the Wilsons as the borrowers. (Id.) Plaintiffs allegedly experienced financial difficulties and defaulted on their loan sometime in 2008. (Id.) Plaintiffs allege that on April 29, 2009, a Notice of Default and Election to Sell Under Deed of Trust was recorded with the Riverside County Recorder's Office. (Id.) On June 4, 2009, a Substitution of Trustee was recorded, naming NDEx West LLC ("NDEx") the new trustee. (Id. at ¶ 10.) On August 3, 2009, a Notice of Trustee's sale was allegedly recorded. (Id. at ¶ 11.) Thereafter, a series of Notices of Trustees Sales and Substitutions of Trustees were recorded with the Riverside County Recorder's Office spanning November 2010 to July 2012. (Id. at ¶¶ 12-14.) Plaintiffs allege that on August 31, 2012, a Trustee's Deed Upon Sale conveyed title to the subject property to Preeminent for a sale price of $253,200. (Id. at ¶ 15.) Plaintiffs allege, however, that on April 25, 2013, a Notice of Rescission of Trustee's sale was recorded conveying the property back to NDEx. (Id. at ¶ 16.) A Notice of Rescission of Notice of Default was allegedly recorded by NDEx on February 21, 2014, and then by MTC on March 29, 2016. (Id. at ¶¶ 17, 18.)

As a result of the foregoing, Plaintiffs allege that the conveyance to Preeminent, which triggered a reassessment of the subject property, "more than doubled their mortgage payment, to an amount the Wilson's could not afford to pay." (Id. at ¶ 19.) Plaintiffs allege that during this time, they continued making monthly mortgage and escrow payments until their lender started rejecting payments. (Id. at ¶ 20.) Plaintiffs allege that when their lender started rejecting payments, they were $32,000 in arrears. (Id.)

In December 2015, Plaintiffs allegedly entered into an agreement with Chase to pay all arrears in exchange for reinstating the loan at $1,300 per month ("Reinstatement Agreement"). (Id. at ¶21.) Still, two months later, Chase allegedly increased Plaintiffs' monthly payment to $2,800 per month, adding an additional $7,500 in arrears. (Id. at ¶ 22.) Plaintiffs allege that Chase never responded to their efforts to work out more affordable terms, and Chase was aware of the negative balance in the Escrow account when it calculated the reinstatement amount. (Id. at ¶ 24, 26.) Plaintiffs, therefore, maintain that Chase failed to conduct proper due diligence and "[b]ut for Chase's wrongful foreclosure of the property the county never would have had cause to reassess the property." (Id. at ¶ ¶ 27, 31.) On January 26, 2017, a Notice of Trustee Sale was recorded. (Id. at ¶ 33.)

The Notice of Default allegedly contained a false declaration of compliance under California Civil Code section 2923.55 because it stated that Plaintiffs were contacted and assessed for foreclosure prevention and 30 days had passed even though Plaintiffs allege they were never contacted. (Id. at ¶ 32.) Plaintiffs also allege that Defendants: (a) failed to properly record a substitution of trustee under California Civil Code 2934, (b) failed to, at any point, assign a single point of contact despite Plaintiffs' requests, (c) initiated unlawful non-judicial foreclosure proceedings, yet failed to consider Plaintiffs for foreclosure prevention alternatives, and then, (d) denied Plaintiffs any foreclosure alternatives without any explanation. (Id. at ¶ 32.) Plaintiffs further allege that they had to pay penalties, interest, and back dues that they would not have owed but for Defendants' breach of California Civil Code section 2924. (Id. at ¶ 40.) On those bases, Plaintiffs bring six claims under the California Homeowner's Bill of Rights, Cal. Civ. Code § 2924, et seq., and claims for unfair business practices, Cal. Bus. & Profs. Code § 17200, breach of implied covenant of good faith and fair dealing, injunctive relief, negligence, quiet title, negligent misrepresentation, and breach of contract loan modification agreement.[1]

## II. DISCUSSION

### A. Legal Standard

Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute. Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013). As such, federal courts only have original jurisdiction over civil actions in which a federal question exists or in which there is complete diversity of citizenship between the parties and the amount in controversy

---

[1] Specifically, Plaintiffs allege the following claims: (1) violation of California Civil Code section 2923.55, which requires homeowners be contacted to pursue non-foreclosure options prior to recording a notice of default, Cal. Civ. Code § 2923.5, (2) violations of the procedures and due diligence requirements when offering homeowners a loan modification, Cal. Civ. Code § 2923.6, (3) failing to establish a single point of contact, communicating the process, coordinating receipt of all documents, and otherwise ensuring that a borrower is considered for all foreclosure prevention alternatives upon a borrower's request for a foreclosure prevention alternative, Cal. Civ. Code § 2923.7, (4) providing written notification within five days after recording a notice of default that borrower may be eligible for a loan prevention alternative, Cal. Civ. Code § 2924.9, (5) failing to provide written acknowledgement of the receipt of a loan modification application, Cal. Civ. Code § 2924.10, (6) submitting a false declaration of compliance prior to recording a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee, Cal. Civ. Code § 2924.17, (7) unfair business practices under California Business and Professions Code section 17200, (8) breach of implied covenant of good faith and fair dealing, (9) injunctive relief for material violations of Sections 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.17, Cal. Civ. Code § 2924.12, (10) negligence and negligence per se, (11) quiet title, (12) negligent misrepresentation, and (13) breach of contract.

exceeds $75,000.  See 28 U.S.C. §§ 1331, 1332.[2]  "Complete diversity" means that "each defendant must be a citizen of a different state from each plaintiff."  In re Digimarc Corp. Derivative Litigation, 549 F.3d 1223, 1234 (9th Cir. 2008).  As noted above, Defendants removed on the basis of diversity jurisdiction.  (Not. of Removal.)  To remove a case from state court to federal court, the removing defendant files a notice of removal in the federal district court in the district and division within which the state court action was pending.  28 U.S.C. § 1446(a).  The notice must contain "a short and plain statement of the grounds for removal"—in a case relying on diversity jurisdiction, that the parties are citizens of different states and the amount in controversy exceeds $75,000, see 28 U.S.C. § 1332(a)—"together with a copy of all process, pleadings, and orders" served previously on the removing defendant.  Id.

If a plaintiff challenges removal on the basis that the amount in controversy is below the jurisdictional minimum, and thus, the federal court is without subject-matter jurisdiction, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014); 28 U.S.C. § 1446(c)(2)(B).  If a defendant fails to meet its burden to show that the damages exceed $75,000 by a preponderance of the evidence, the Court must remand the matter to state court.  28 U.S.C. § 1447(c); Emrich v Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992); see also Jackson v. Specialized Loan Servicing, LLC, No. CV 14-05981 MMM PLAX, 2014 WL 5514142, at *6 (C.D. Cal. Oct. 31, 2014) (quoting Gaus).  Indeed, doubts as to removability must be resolved in favor of remanding the case to state court.  Jackson, 2014 WL 5514142, at *6.

---

[2] **(a)** The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
  **(1)** citizens of different States;
  **(2)** citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;
  **(3)** citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
  **(4)** a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332.

**B. Plaintiffs' Motion**

Plaintiffs argue that the case must be remanded because MTC is a California corporation so complete diversity does not exist, and Defendants cannot show that the amount in controversy exceeds $75,0000. (Motion at 1.) Specifically, Plaintiffs assert that the value of the loan is not the proper measure of the amount in controversy "[w]here a Plaintiff merely seeks to temporarily enjoin foreclosure pending a defendant's compliance with the law." (Id. at 3.) In support, Plaintiffs maintain that their complaint "does not pray for the Court to relieve [them] of this debt," they do not seek to "strip Defendants from their interest in the subject property and right to collect on the debt[.]" (Id. at 4.) Instead, Plaintiffs contend they only seek an opportunity to be considered for foreclosure prevention opportunities prior to Defendants foreclosing and to hold "Defendants accountable for their failure to adhere to requirements necessary to conduct nonjudicial foreclosure." (Id.) Since in Plaintiffs' view, Defendants fail to provide any evidence of the "pecuniary results of halting foreclosure proceedings while complying with their statutory obligations," Plaintiffs contend that Defendants cannot meet their burden to establish the jurisdictional minimum has been met by a preponderance of the evidence. (Id.)

Defendants, on the other hand, argue that Plaintiffs' request for injunctive relief "places their Loan in the original principal amount of $435,500.00 in controversy." (Opp'n at 6.) Defendants further contend that the cases Plaintiffs cite are distinguishable because in those cases, the plaintiffs only sought to temporarily stop foreclosure activity, whereas here, Plaintiffs seek to avoid the entire lien through the quiet title action. (Id. at 7.)

The parties also dispute MTC's status for purposes of establishing complete diversity. Defendants argue that MTC, as a trustee, is only a nominal defendant under California law, while Plaintiffs argue that since they allege that MTC acted improperly and seek damages from both Chase and MTC, and both Plaintiffs and MTC are California citizens, complete diversity jurisdiction is absent. (See Opp'n at 8-9; Motion at 5-6.)

**1. Amount in Controversy**

To determine whether the amount in controversy meets the jurisdictional requirement, a court may first consider whether it is facially apparent from the complaint. Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 690 (9th Cir. 2006). Plaintiffs' Complaint does not demand a specific dollar amount, thus Defendants must prove by a preponderance of evidence that the amount in controversy exceeds $75,000. Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005)

Plaintiffs' first through sixth causes of action seek damages for Defendants' past violations of the Homeowner Bill of Rights. (See, e.g., Compl. at ¶ 49)(referring to harms suffered as "back dues and interest that has accrued to date, lost opportunity to pursue other foreclosure prevention options, the reinstatement amount they paid which included late fees and interest, the down payment, and other actual and consequential damages. . ."). Nothing in the Complaint indicates the amount of actual damages Plaintiffs suffered. The Court cannot estimate the excess

interest or late fees or the harm to Plaintiffs' credit to conclude that such violations caused damages exceeding $75,000.

Still, Plaintiffs also seek injunctive relief for Defendants' alleged violations of California Civil Code sections 2923, et seq. and 2924, et seq. in their First through Sixth and Ninth causes of action. (See, e.g., Compl. ¶¶ 50, 105.) Indeed, Plaintiffs seek "to enjoin [] material violations" of the California Homeowner's Bill of Rights. As to foreclosure, Plaintiffs seek "an order enjoining Defendants from foreclosing on the subject property, pursuant to Civil Code § 2924.12." (Id. at ¶ 50.) In actions seeking equitable relief, the amount in controversy is established by measuring the value of the object of the litigation. Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002).

Since violations of the Homeowner Bill of Rights do not authorize permanent injunctive relief, but permit an injunction only until the defendant "show[s] that the material violation has been corrected and remedied," Cal. Civ. Code §§ 2924.12, 2924.19, the injunctions referred to in the First through Sixth and Ninth causes of action appear to only be temporary. See Mabry v. Superior Court, 185 Cal. App. 4th 208, 223 (2010)("The available, existing remedy is found in the ability of a court in section 2924g, subdivision (c)(1)(A), to postpone the sale until there has been compliance with section 2923.5."). That said, Plaintiffs also bring an action to quiet title.

Defendants are correct that value of the loan can be used to establish the amount in controversy where a plaintiff seeks to quiet title or requests an injunction that will forever bar a defendant from foreclosing. See Chapman v. Deutsche Bank Nat. Trust Co., 651 F.3d 1039, 1041 (9th Cir. 2011) (holding that in a quiet title action, the amount in controversy is calculated by the value of the property at issue); Larkin v. Bank of Am., N.A., No. EDCV16852PSGSKX, 2016 WL 4180942, at *2 (C.D. Cal. Aug. 4, 2016); Hendricks v. Wells Fargo Bank, N.A., 2015 WL 1644028 (C.D. Cal. Apr.14, 2015) (holding that in an action seeking to enjoin an impending foreclosure, following the recording of a Notice of Trustee's Sale, the amount in controversy includes the value of the property as "at least one object of the litigation"); Reyes v. Wells Fargo Bank, N.A., 2010 WL 2629785, at *6 (N.D. Cal. June 29, 2010) (holding that in a case challenging an alleged unlawful foreclosure, the amount in controversy was satisfied because both the amount of the plaintiff's indebtedness on the loan and the fair market value of the property exceeded $75,000); Gomez v. J.P. Morgan Chase Bank, N.A., No. CV 15-03331-AB MRWX, 2015 WL 3745027, at *3 (C.D. Cal. June 12, 2015). Thus, to determine whether the value of the subject property or the amount of the loan is the proper measure of damages, the Court must assess the object of Plaintiffs' quiet title claim.

The Court is not convinced that Plaintiffs seek to obtain title to the property free of any encumbrances or liens since the majority of Plaintiffs' allegations refer to the harm they suffered when they were deprived of the opportunity to modify their loan. While their Eleventh Cause of Action states that Defendants' claims are without "any right," including, "title, stake, lien, or interest in the subject property," it does not indicate which "note" is allegedly fraudulent. (Compl. at ¶ 134.) Plaintiffs allege that when they defaulted on their original loan, they negotiated with Chase and entered into a Reinstatement Agreement, but because Chase failed to

disclose the assessment conducted on the property as a result of the alleged wrongful foreclosure that was later rescinded, their mortgage payments doubled. (Id. at ¶ 19.) Still, Plaintiffs allege that they kept making monthly payments and escrow payments pursuant to an agreed loan modification until their payments were rejected. (Id. at ¶ 20.) Although Plaintiffs allege that "Defendants claim an interest adverse to Plaintiffs' title in the subject property," and "[t]hese claims are without any right and Defendants have no right, title, stake, lien, or interest in the subject property," it appears that Plaintiffs primarily seek a modification of their loan so they can stay in their home. (Id. at ¶ 134.)

Significantly, throughout the Complaint, Plaintiffs indicate that they intend to become current on their loan payments, but have been prevented from doing so due to Defendants' allegedly wrongful acts and omissions. In fact, all of Plaintiff's factual allegations recount many attempts to try to work with Defendants to get their loan current. (See, e.g., Compl. at ¶ 85)("To date, the Wilsons have been diligent in contacting Defendants in attempts to resolve the situation, including applying and timely sending in their loan modification application documents. . ."); (id. at ¶ 99)("Defendants. . . breached their promise to Plaintiffs not to conduct the non-judicial foreclosure pending Plaintiffs' continued adherence to perform under the terms of the Reinstatement Agreement"); (id. at ¶ 128)("Had Defendants complied with [the Homeowner Bill of Rights]. . .[Plaintiffs] would not have suffered the very injuries that give rise to this Complaint because they would have been able to successfully pursue and obtain a non-foreclosure alternative and *become current on their loan*.")(emphasis added). If Plaintiffs wanted to rescind their loan, they would have brought a cancellation of written instruments cause of action. Thus, the Complaint read in context indicates that rather than seeking to rescind the loan, Plaintiffs merely want an opportunity to carry out their obligations under a mortgage that complies with the Homeowners Bill of Rights.

The significance of the Eleventh Cause of Action for purposes of determining the amount in controversy depends on whether Plaintiffs currently hold title. If Plaintiffs currently hold title to the property, then the object of the quiet title action "to finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he [or she] may be entitled to" would not be the full value of the property. Peterson v. Gibbs, 147 Cal. 1, 5 (1905). However, if Plaintiffs do not currently hold title to the property, then an action to "determin[e] their title in the subject property. . . as sole owners" would place the value of the property in controversy. Regardless, a quiet title action would not destroy the rights of parties whose interests were properly recorded. See Deutsche Bank Nat'l Tr. Co. v. Pyle, 13 Cal. App. 5th 513, 524–25 (2017)(observing that a quiet title judgment would not impair interests of parties "whose interest was actually known to the plaintiff at the time"). From the factual allegations, it is unclear whether Plaintiffs defaulted on their loan, are only in arrears, or whether a foreclosure sale has actually occurred. The Complaint states that a Notice of Trustee Sale was recorded on January 26, 2017. Still, Plaintiffs appear to still be in possession of their home. Without any indication of whether a foreclosure sale has occurred, the Court cannot determine whether title to the subject property has been transferred. Thus, practically speaking, Plaintiffs' quiet title action would not necessarily operate

to rescind the loan or extinguish any valid interests to the amounts due thereunder where the Complaint is ambiguous as to whether title has actually passed.

Since under these circumstances, a quiet title action would not necessarily strip Defendants of their interests in the loan, the Court cannot conclude that Plaintiffs' mere inclusion of this claim warrants applying the standard articulated in Chapman v. Deutsch Bank Nat. Trust Co., 651 F.3d 1039, 1041 (9th Cir. 2011)(holding that in a quiet title action, the amount in controversy is calculated by the value of the property at issue).

Plaintiffs argue that they only seek to temporarily enjoin foreclosure proceedings. Given that the Complaint is ambiguous on this point, ambiguities in the complaint must be resolved in favor of remand, and a judgment for Plaintiffs in this case would not preclude a foreclosure sale, the Court does not find the value of the property to be a proper measure of damages. Hunter v. Phillip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009); Pyle, 13 Cal. App. 5th at 523 ("[A] void judgment in the chain of title does not pass title free of the lien purportedly cancelled by the void judgment."). "Courts have roundly rejected the argument that the amount in controversy is the entire amount of the loan" in cases where the plaintiff seeks only to enjoin a foreclosure sale pending a loan modification application. See, e.g., Vergara v. Wells Fargo Bank, N.A., No. 15–58, 2015 WL 1240421, at *2 (C.D. Cal. Mar.17, 2015) (citing cases); Gomez v. J.P. Morgan Chase Bank, N.A., No. CV 15-03331-AB MRWX, 2015 WL 3745027, at *3 (C.D. Cal. June 12, 2015)(granting a motion to remand despite plaintiff's request for injunctive relief, stating "[t]he crux of Plaintiffs' complaint, however, is that they are entitled to a loan modification, and Plaintiffs' passing references to the possibility of losing their home and being forced into foreclosure does not put the value of the Subject Property and/or the balance of Plaintiffs' loan in controversy."); Perez v. CitiMortgage, Inc., No. SACV1601239CJCDFMX, 2016 WL 4599891, at *2 (C.D. Cal. Sept. 2, 2016)(rejecting the defendant's argument that since the plaintiff sought to quiet title, the amount in controversy should be measured by the value of the property because plaintiff did not seek to permanently enjoin foreclosure).

The appropriate test for determining the amount-in-controversy therefore is "the pecuniary result to either party which the judgment would directly produce." Essley v. Wells Fargo Bank, N.A., No. EDCV161672JGBDPX, 2016 WL 5746336, at *5 (C.D. Cal. Sept. 30, 2016). Defendants fail to provide any evidence of what it would cost to offer Plaintiffs a loan modification or the amount of pecuniary harm occasioned by delaying foreclosure proceedings. Construing any ambiguities in favor of remand, the Court cannot conclude that Defendants have met their burden to establish the amount in controversy exceeds $75,000 by a preponderance of the evidence. Accordingly, the Court GRANTS Plaintiffs' Motion to Remand.

**2. Attorney's Fees**

Plaintiffs also request an award of attorneys' fees. Pursuant to 28 U.S.C. § 1447(c), a district court has the discretion to award attorneys' fees and costs upon remand if the defendant lacked an "objectively reasonable" basis for removal. Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). The preceding discussion refutes the notion that Defendants lacked an objectively

reasonable basis to believe that removal was proper.  Plaintiffs' Complaint was not a model of clarity as to the type of injunction sought or whether a foreclosure sale has actually occurred.  On that basis, the Court DENIES Plaintiffs' request for attorney's fees.

### III. CONCLUSION

Based on the foregoing, the Court GRANTS Plaintiffs' Motion to Remand, DENIES Plaintiffs' Request for Attorney's Fees, and REMANDS the matter to Riverside Superior Court.


**IT IS SO ORDERED.**